1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE BOEING COMPANY,

        Plaintiff,

    v.

AGRICULTURAL INSURANCE COMPANY, et al.,

        Defendants.

CASE NO. C05-921C

ORDER

This matter comes before the Court on a number of motions related to the arbitrability of this dispute:

- Defendant Federal Insurance Company's ("Federal") motion to dismiss the complaint, stay the action, and compel arbitration (Dkt. No. 19);

- TIG Insurance Company's ("TIG") motion to dismiss and compel arbitration (Dkt. No. 31);

- Defendant Agricultural Insurance Company's ("AIG") motion for partial summary judgment (Dkt. No. 44);

- Defendant Federal's motion to dismiss or stay the cross-claims of AIG and Gulf Insurance Company ("Gulf") (Dkt. No. 56); and

- Defendant TIG's motion to dismiss AIG's and Gulf's cross-claims (Dkt. No. 58).

ORDER – 1

Because each of these motions ultimately concerns whether and to what extent this dispute will be adjudicated in this Court or in arbitration, and are in many ways contingent on each other, the Court disposes of these motions together in this Order. The Court has considered the papers submitted by the parties and determined that oral argument is not necessary. The Court hereby finds, rules, and orders as follows.

## I.      Introduction and Summary.

This dispute arises from a series of employment-discrimination cases in which Boeing became embroiled from 1998 to 2000. It reported those cases to its primary insurer, Federal, in each of the years in which the cases were instituted. Federal and a number of excess carriers now find themselves in a coverage dispute with Boeing regarding who is to pay and in what amounts as a result of losses incurred by Boeing during those discrimination cases.[1] Focusing on an arbitration clause in Boeing's primary policy with Federal, which each of the excess policies incorporates by reference, the parties dispute the extent to which this controversy should be settled in this Court or in private arbitration.

In the aggregate, the above-noted motions present the Court with the following question: does Washington law preclude parties who have expressly agreed to arbitrate insurance-coverage disputes from availing themselves of that agreement? Because nothing in Washington law precludes the Court from giving force to such an express agreement, the Court GRANTS Defendant Federal's motion to STAY Boeing's claims and ORDERS the parties to engage in arbitration under the terms of Federal's policy. Defendant TIG's substantively similar motion to dismiss is DENIED as moot. For the same reasons, the Court GRANTS Federal's motion to STAY the cross-claims of AIG and Gulf. TIG's

---

[1] Although Boeing also referenced in its complaint events that may implicate policies with Federal dating back to 1996, the Court does not address those events or policies in this Order. In its opposition to Federal's current motion, Boeing disclaimed any intent to pursue in this litigation claims relating to those earlier policies.

ORDER – 2

1   substantively similar motion is DENIED as moot.  Finally, AIG's motion for partial summary judgment is

2   DENIED.

3          **II.     Motions to Dismiss or Stay Boeing's Claims and Compel Arbitration.**

4          Defendants Federal and TIG move for dismissal of Boeing's complaint or for a stay of

5   proceedings on the basis of an agreement in Boeing's insurance policy with Federal requiring the parties

6   to submit coverage questions to arbitration.  Boeing responds that, plain language of the agreement

7   notwithstanding, Washington Revised Code section 48.18.200 precludes the Court from enforcing

8   clauses that require arbitration of insurance-coverage disputes.

9          As with all contractual disputes, the Court begins by analyzing the language of the agreement

10  itself.  In this case, the language of the policy could not be clearer: "If [Federal] and [Boeing] do not

11  agree upon *coverage* provided under this [policy], then either party may make a written demand for

12  arbitration."  (Johnson Decl., Ex. A at 12 (emphasis added).)  Both Federal and Boeing, moreover, agree

13  that the present dispute is over coverage: "This case is a substantive dispute over the scope of coverage

14  available to Boeing, and not a mere dispute over the valuation of Boeing's loss."  (Boeing's Opp'n, at

15  7:31-33; *see also* Federal's Mot. at 1 ("Each and every claim asserted in Boeing's Complaint relates to

16  the coverage due under the Policy.").)

17         Notwithstanding what appears to be a clear expression of intent to arbitrate coverage disputes

18  with its insurer, Boeing argues that Washington law precludes the enforcement of agreements to arbitrate

19  coverage disputes.[2]  However, because the policy at issue is an agreement to arbitrate and affects

20  interstate commerce, the Court must first turn to federal law.[3]  Specifically, the Federal Arbitration Act

21  _____

22         [2] Because the Court sits in diversity jurisdiction, the substantive law of Washington applies.  *See*
    *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001).

23

24         [3] As noted in the complaint, Boeing is a Delaware corporation headquartered in Illinois, and
    Federal is an Indiana corporation headquartered in New Jersey.  Both parties transact business
    nationwide, and indeed, worldwide.  Neither party disputes that the insurance policy at issue in this case

25  affects interstate commerce.  *See* 9 U.S.C. § 1 ("'[C]ommerce, as herein defined, means commerce

26  ORDER – 3

1   requires that in the context of a contract affecting interstate commerce, "an agreement in writing to

2   submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable,

3   and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."

4   9 U.S.C. § 2.  The Act was passed to "ensure judicial enforcement of privately made agreements to

5   arbitrate," and requires courts to compel arbitration where arbitrable claims exist and a motion is made.

6   *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *see also Walters v. A.A.A.*

7   *Waterproofing, Inc.*, 85 P.3d 389, 391 (Wash. Ct. App. 2004).  To this end, the Act requires a court,

8   "upon being satisfied that the issue involved in [the case] is referable to arbitration under such an

9   agreement, shall on application of one of the parties stay the trial of the action until such arbitration" has

10  concluded.  9 U.S.C. § 3.  In addition to the power to stay an action pursuant to a valid arbitration

11  agreement, the Court has the power to compel the parties to arbitrate: "[U]pon being satisfied that the

12  making of of the agreement for arbitration or the failure to comply therewith is not in issue, the court

13  shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

14  agreement."  9 U.S.C.  § 4.

15          Despite the plain language of the arbitration clause in Federal's policy and of the Federal

16  Arbitration Act, Boeing argues that Washington law controls this dispute and prohibits the enforcement

17  of agreements to arbitrate insurance-coverage disputes.  Specifically, Boeing points to section

18  48.18.200(1), which states in relevant part:

19          No insurance contract delivered or issued for delivery in this state and covering
            subjects located, resident, or to be performed in this state, shall contain any
20          condition, stipulation, or agreement . . . (b) depriving the courts of this state of the
            jurisdiction of action against the insurer . . . .
21
22  WASH. REV. CODE § 48.18.200.  Tying this statute back to the Federal Arbitration Act, Boeing argues

23  that section 48.18.200 constitutes the "grounds as exist at law . . . for the revocation of the contract"

    under § 3 of the Act.
24
    _____

25  among the several states . . . .").

26  ORDER – 4

1    The viability of Boeing's argument turns entirely on whether its agreement to arbitrate coverage

2    disputes effectively "depriv[es] the courts of this state of the jurisdiction of action against the insurer."

3    Turning first to Washington's statutory scheme, Boeing is correct that Washington is among the states

4    that "explicitly make compulsory arbitration agreements in *uninsured motorist coverage* endorsements

5    unenforceable." 21 WILLISTON ON CONTRACTS § 57:168 (4th ed. 2004) (emphasis added). It is also true

6    that an ever-dwindling number of states expressly prohibit the enforcement of arbitration clauses in

7    insurance contracts generally. *See, e.g.*, ARK. CODE ANN. § 16-108-201(b)(2); GA. CODE ANN. § 9-9-

8    2(c)(3); KAN. STAT. ANN. § 5-401(c)(1); KY. REV. STAT. ANN. § 417.050(2); MO. REV. STAT. § 435.350;

9    S.D. CODIFIED LAWS § 21-25A-3; VT. STAT. ANN. tit. 12, § 5653. However, Washington is not among

10   those states. The same year that the Washington state legislature passed section 48.18.200, it passed a

11   law explicitly excluding employment contracts – but not insurance contracts – from those for which

12   arbitration clauses are enforceable. *See* WASH. REV. CODE § 7.04.010. This omission is telling. *See*

13   *Jacobsen v. Dep't of Labor & Indus.*, 110 P.3d 253, 257 (Wash. Ct. App. 2005) ("Where a statute

14   specifically designates the things or classes of things upon which it operates, an inference arises in law

15   that all things or classes of things omitted from it were intentionally omitted by the legislature under the

16   maxim *expressio unius est exclusio alterius* – specific inclusions exclude implication."). Thus, there is no

17   explicit statutory bar to the Court's enforcement of Boeing and Federal's arbitration agreement.

18   Nor is there anything in the Washington courts' interpretation and application of the state's

19   insurance law that impairs agreements to arbitrate insurance-coverage disputes. In fact, the Supreme

20   Court of Washington has consistently interpreted the state's policy as one of liberal deference to

21   arbitration agreements. *See Godfrey v. Hartford Cas. Ins. Co.*, 16 P.3d 617, 620 (Wash. 2001)

22   ("'Encouraging parties voluntarily to submit their disputes to arbitration is an increasingly important

23   objective in our ever more litigious society.'") (quoting *Boyd v. Davis*, 897 P.2d 1239, 1242 (Wash.

24   1995)); *Price v. Farmer's Ins. Co.*, 946 P.2d 388, 391 n.3 (Wash. 1997) (noting that "parties are free to

25   decide whether they wish to use arbitration in lieu of the judicial process").

26   ORDER – 5

1    Because no Washington court has specifically addressed section 48.18.200's effect on express

2    agreements to arbitrate coverage disputes, Boeing points to a series of Washington decisions in the

3    context of under- or uninsured motorist (UIM) insurance.  Those cases, argues Boeing, establish

4    Washington's policy against enforcing agreements to arbitrate coverage disputes.  *See, e.g.*, *Price*, 946

5    P.2d at 392 (arbitrating coverage disputes is not "the usual practice" in Washington); *Hartford Accident*

6    *& Indem. Co. v. Novak*, 520 P.2d 1368, 1374 (Wash. 1974) ("The authorities are uniform that the

7    question of coverage is not an issue for arbitration . . . ."); *Heaphy v. State Farm Mut. Auto. Ins. Co.*, 72

8    P.3d 220, 223 (Wash. Ct. App. 2003) ("[Q]uestions about coverage are not subject to arbitration.");

9    *Keesling v. W. Fire Ins. Co.*, 520 P.2d 622, 626 (Wash. Ct. App. 1974) (agreements to arbitrate

10   coverage disputes "'will not be allowed to interfere with or bar the litigation of such controversies when

11   brought into court'") (quoting *Randall v. Am. Fire Ins. Co.*, 25 P. 953, 957 (Mont. 1891)).

12       In fact, this line of precedent addressing UIM policies is not a prohibition on the arbitration of

13   coverage disputes but an interpretation of polices that generally contain no such provision.  Thus, where

14   the parties have not expressly agreed to arbitrate coverage disputes – as is usually the case in UIM

15   policies – Washington courts will not force insureds to do so.  *See, e.g.*, *Heaphy*, 72 P.3d at 223 (insurer

16   had admitted coverage, so damages issues were arbitrable); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 751

17   P.2d 282, 289 (Wash. Ct. App. 1988) (policy's terms gave defendant right to arbitrate liability and

18   damages issues but not coverage); *Cantwell v. Safeco Ins. Co.*, 678 P.2d 852, 854 (Wash. Ct. App. 1984)

19   (parties agreed that plaintiff was covered under policy; thus, "issues of liability and injuries and damages

20   are the issues to be arbitrated").[4]   And the Supreme Court of Washington has indicated, if not held, that

21   when parties expressly agree to arbitrate coverage issues, state law does not prohibit courts from

22

23   ─────────────────────

24       [4] Boeing relies heavily on *Keesling*, 520 P.2d at 626, as prohibiting the enforcement of
     agreements to arbitrate coverage disputes.  But like the UIM cases above, the *Keesling* court was not
     confronted with an express agreement to do so; rather, that case addressed the arbitrability of an appraisal

25   dispute under a fire-insurance policy.  *See id.* at 625-26.

26   ORDER – 6

1    enforcing such an agreement. *See Godfrey*, 16 P.3d at 620 & n.3 (noting that "parties agreed by contract

2    to resolve their disputes over UIM coverage by arbitration"); *see id.* at 621 ("[T]he parties are free to

3    decide by contract . . . which issues are submitted to arbitration . . . ."); *Price*, 946 P.2d at 392 (observing

4    that "an arbitration clause *could* submit coverage questions to arbitration") (emphasis added).

5         Lacking any specific support from Washington codes or courts, Boeing directs the Court to an

6    apparent split between the Louisiana courts and the First Circuit's interpretation of Massachusetts law.

7    The insurance laws of both those states track the language of section 48.18.200 nearly identically. *See*

8    MASS. GEN. LAWS ch. 175, § 22; LA. REV. STAT. ANN. § 22:629.  However, the Louisiana courts have

9    found that section 22:629(A)(2) bars the enforcement of any arbitration clause in an insurance contract.

10    *See Hobbs v. IGF Ins. Co.*, 834 So. 2d 1069, 1071 (La. Ct. App. 2003) ("It is clear, in Louisiana, [that]

11    arbitration clauses in contracts of insurance are prohibited as a matter of public policy . . . .").  In

12    contrast, the First Circuit interpreted a substantively identical Massachusetts law to allow the

13    enforcement of such agreements. *See DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 81 (1st Cir.

14    2000).

15         The Court's decision today is guided primarily by the plain language of Washington's statutory

16    scheme and the lack of any prohibition in Washington case law, but the Court also finds the First Circuit's

17    reasoning in *DiMercurio* persuasive.  As here, that court faced a state statute passed long before the

18    Federal Arbitration Act, when the judiciary's view of arbitration was very different:

19              The prevailing attitude of the courts toward arbitration before the passage of the

20              FAA was one of disapproval, and this typically was couched as an objection to
              being ousted of their jurisdiction . . . . [But t]he act was passed not to oust the

21              jurisdiction of the courts but to provide for maintaining their jurisdiction while at
              the same time recognizing arbitration agreements as affirmative defenses and

22              providing a forum for their specific enforcement.

23    202 F.3d at 75-76.  The Court agrees that the *DiMercurio* opinion "reflects the modern view that

24    arbitration agreements do not divest the courts of jurisdiction, though they prevent courts from resolving

25

26    ORDER – 7

1  the merits of arbitrable disputes." *Id.* at 77.  Washington case law suggests that section 48.18.200 should

2  be interpreted similarly.[5]

3  　　　　Finally, because neither section 48.18.200 nor Washington case law interpreting and applying that

4  section (or Washington's insurance statutes generally) bars the enforcement of express agreements to

5  arbitrate coverage disputes, the McCarran-Ferguson Act does not apply here.  That act precludes the

6  application of any federal statute that "invalidate[s], impair[s], or supercede[s] any law enacted by any

7  State for the purpose of regulating the business of insurance."  15 U.S.C. § 1012(b).  But here, the

8  Federal Arbitration Act's requirement that courts enforce express agreements to arbitrate does not

9  invalidate, impair, or supercede – and in fact, is entirely consistent with – Washington law allowing such

10  arbitrations to proceed.  "[I]f a state insurance law does not prohibit arbitration, the mere fact that an

11  insurance policy is at issue, rather than some other type of contract, does not implicate the McCarran-

12  Ferguson Act or allow the parties to ignore the mandate of the Federal Arbitration Act."  21 WILLISTON

13  ON CONTRACTS § 57:168 (4th ed. 2004).

14  　　　　For these reasons, Defendant Federal's motion to STAY Boeing's claims is GRANTED, and

15  Boeing and Federal are ORDERED to proceed with arbitration according to the terms of Federal's

16  policy.  TIG's motion to dismiss or stay and compel arbitration is substantively identical to Federal's and

17  thus is DENIED as moot.

18  **III.　Federal's and TIG's Motions to Dismiss or Stay Excess Carriers' Cross-Claims**

19  　　　　The balance of the motions on the docket address claims between Federal and various excess

20  carriers.  First, Defendants AIG and Gulf request that the Court adjudicate their cross-claims against

21

22

23  ───────────────

24  　　　[5] The Court rejects Boeing's additional argument that the arbitration agreement here constitutes a
*de facto* choice-of-law provision.  The fact that the parties agreed to contract out of traditional common

25  law remedies such as attorneys fees does not require the contract "to be construed according to the laws
of any other state or country" in violation of section 48.18.200(1)(a).

26  ORDER – 8

1    Federal and TIG regardless of the disposition of Federal's motion to stay and compel arbitration.[6]

2    Federal and TIG have both responded with motions to dismiss or stay AIG's and Gulf's cross-claims.  In

3    addressing these issues, the Court's primary concern is to avoid proceeding in a way that renders the

4    arbitration between Boeing and Federal "redundant and meaningless; in effect, thwarting the federal

5    policy in favor of arbitration."  *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000).

6            AIG's and Gulf's cross-claims are requests for declarations limiting their exposure in the event

7    Boeing's losses exceed the coverage provided by the primary carrier (Federal) and other excess carriers

8    whose duties to pay precede those of AIG and Gulf.  As such, the Court may exercise its discretion to

9    issue such declarations under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).  *Wilton v.*

10   *Seven Falls Co.*, 515 U.S. 277, 282-83 (1995).  "Even if the district court has subject matter jurisdiction

11   [under the Act], it is not required to exercise its authority to hear the case."  *Huth v. Hartford Ins. Co.*,

12   298 F.3d 800, 802 (9th Cir. 2002).

13           Both AIG and Gulf argue that the Court should exercise its discretion to adjudicate their cross-

14   claims because they are not bound by the arbitration agreement between Boeing and Federal, and that

15   policy concerns favor proceeding in this Court while Boeing and Federal are in arbitration.  As to their

16   first contention, it is true that Federal's arbitration agreement with Boeing is not, by itself, sufficient to

17   apply the mandatory stay under § 3 of the Federal Arbitration Act against AIG and Gulf.  *See, e.g.*, *IDS*

18   *Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1997) (Posner, C.J.) (under § 3 of the Act,

19   "person sought to be stayed" must be party to the arbitration agreement).  However, "district courts,

20   despite the inapplicability of the FAA, may stay a case pursuant to the power inherent in every court to

21   control the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

22   and for litigants."  *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2nd Cir. 1997) (internal quotations

23

24           [6] AIG's request arrives in the form of a "Statement Regarding Motions to Dismiss" (Dkt. No. 35).
     The Court treats this request as part and parcel of AIG's opposition papers to Federal and TIG's motions
25   to stay AIG's cross-claims.

26   ORDER – 9

1   omitted).  The Ninth Circuit has stated that district courts should consider whether a stay would avoid

2   duplicative litigation; for example, "[i]f there are parallel state proceedings involving the same issues and

3   parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit

4   should be heard in state court."[7]  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)

5   (en banc).

6          Against this backdrop, the critical question is whether there is any means of determining AIG's

7   and Gulf's potential exposure without deciding the core dispute between Federal and Boeing – and thus

8   risking duplicative or inconsistent rulings by this Court and the arbitrator.  In other words, can the Court

9   declare that AIG and Gulf have no obligation to reimburse Boeing's losses without ruling that the

10  underlying employment actions were either a single coverage event or three separate events?  The excess

11  carriers themselves answer this question: "the nature and extent of Gulf's exposure depends largely on

12  whether [the employment-discrimination cases] are considered one 'integrated employment occurrence'

13  that is allocated to a single policy year."  (Gulf's Opp'n at 16; *see also* AIG's Opp'n at 4 (describing

14  hypothetical effect on its exposure if employment cases are deemed a single occurrence).)

15         Nonetheless, the parties have submitted voluminous pleadings, declarations, and exhibits

16  requesting that the Court determine (1) the number of occurrences; and (2) the probability that, given a

17  ruling on the number of occurrences, the excess carriers' policies will be implicated.  Any such finding

18  would result in the Court first compelling arbitration of a dispute, and then adjudicating that same dispute

19

20         [7] There is some ambiguity in the case law as to whether district courts should rely on a stay
21  analysis or the doctrine of abstention in declining to hear a declaratory judgment claim.  In *Dizol*, the
     Ninth Circuit ruled that a district court in such a situation should be guided by the principles of parallel
22  proceeding abstention as set forth in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942).  The Court
     does so here by analyzing the likelihood of duplicative or inconsistent rulings by this Court and the
23  arbitrator.  Regardless, the Court's discretionary power to stay the case in favor of arbitration is not
     functionally different from abstention as in the case of a parallel state proceeding.  *See Nederlandse Erts-*
24  *Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2nd Cir. 1964) ("[A] stay may also be
     appropriate where the pending proceeding is an arbitration in which issues involved in the case may be
25  determined.").

26  ORDER – 10

1    – all within a single order.  The Court therefore finds that Federal has made the required showing of

2    "hardship or inequity in being required to go forward" in this Court.  *See Nederlandse*, 339 F.2d at 442.

3    The same interests that are served by enforcing Boeing and Federal's agreement to arbitrate are served by

4    staying the claims of excess carriers while the amount of primary coverage is determined in arbitration.

5         The Court is cognizant of the fact that there is no procedure for compelling consolidation of the

6    multiple issues and parties that should (ideally) be determined in a single arbitration.[8]  The Court is

7    further aware that a final resolution of this dispute may ultimately require multiple arbitrations.  However,

8    both AIG and Gulf constructed their policies to "follow form" on Federal's policy, so that each knew of

9    and expressly incorporated the arbitration provision in Federal's policy – including  the absence of an

10   agreement to consolidate related parties or disputes in arbitration .  (*See* AIG's Mot. for Partial Summ. J.,

11   at 5:13-14 ("The [AIG] excess coverage . . . provides that the 'coverages provided by this policy shall be

12   the same as that provided by' the Federal Policy.").  Thus, it cannot be the case that Federal's move to

13   compel an exclusive, two-party arbitration comes as a surprise to any of the excess carriers.  The excess

14   carriers will not be heard to complain of the effect (or lack thereof) of arbitration clauses they had every

15   opportunity to modify or reject in their own policies with Boeing.

16        Therefore, the Court GRANTS Federal's motion to STAY the cross-claims of AIG and Gulf.

17   TIG's substantively similar motion is DENIED as moot.

18   **IV.    AIG's Motion for Partial Summary Judgment**

19        Finally, AIG has moved for summary judgment on the core dispute between Federal and Boeing:

20   whether the employment-discrimination actions that spawned this insurance dispute constituted a single

21

22        _____

23        [8] Because there is no evidence of an agreement between Federal and Boeing to consolidate related
     arbitrations, the Court cannot order the excess carriers and their issues consolidated with the Boeing-
     Federal arbitration.  *See Weyerhaeuser Co. V. W. Seas Shipping Co.*, 743 F.2d 635, 636 (9th Cir. 1984)

24   (declining to order consolidation in absence of contractual agreement; "we can only determine whether a
     written arbitration agreement exists, and if it does, enforce it 'in accordance with its terms.'") (quoting 9

25   U.S.C. § 4).

26   ORDER – 11

coverage event (as Federal argues) or a number of separate coverage events (as Boeing and AIG argue). As described above, this is precisely the coverage dispute that Federal's policy requires be arbitrated, and accordingly, the precise dispute that the Court has ordered be arbitrated.  For the reasons set forth in the previous section, AIG's motion is DENIED.

**V.    Conclusion.**

The Court takes the arbitration clause at issue as Boeing and Federal agreed to memorialize it – and as the excess carriers agreed to incorporate it.  Congress has declared a policy of enforcing arbitration agreements as the parties have written them and nothing in Washington law compels a different result.  Accordingly, the Court GRANTS Defendant Federal's motion to STAY Boeing's claims and ORDERS the parties to proceed to arbitration under the terms of Federal's policy.  Defendant TIG's substantively similar motion to dismiss is DENIED as moot.  The Court further GRANTS Federal's motion to STAY the cross-claims of AIG and Gulf.  TIG's substantively similar motion is DENIED as moot.  Finally, AIG's motion for partial summary judgment is DENIED.

This case is STAYED in its entirety pending further order of the Court.

SO ORDERED this 19th day of September, 2005.

UNITED STATES DISTRICT JUDGE

ORDER – 12