UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE BOEING COMPANY,

        Plaintiff,

   v.

AGRICULTURAL INSURANCE COMPANY, et al.,

        Defendants.

CASE NO. C05-0921-JCC

ORDER

      This matter comes before the Court on cross motions for summary judgment filed by the two remaining Defendants in this case, Agricultural Insurance Company ("Agricultural") and Federal Insurance Company ("Federal"). Specifically, the motions and papers addressed by this Order are: (1) Federal's Motion for Summary Judgment on Agricultural's Cross-Claim (Dkt. No. 128), Agricultural's Revised Response in opposition (Dkt. No. 164), and Federal's Reply (Dkt. No. 166); and (2) Agricultural's Motion for Summary Judgment On Its Cross-Claim Against Federal (Dkt. No. 136), Federal's Response (Dkt. No. 145), Agricultural's Reply (Dkt. No. 149), and Federal's Surreply (Dkt. No. 152). The Court has carefully considered these papers and their supporting declarations and exhibits, and has determined that oral argument is not necessary. The Court hereby rules as follows.

//

ORDER - 1

## I. BACKGROUND

Agricultural's cross-claim against Federal is the last remaining controversy in a complicated insurance dispute involving coverage for defense costs and other expenses related to a number of employment discrimination class action lawsuits against the Boeing Company ("Boeing"). The first of these underlying class action lawsuits, *Williams, et al. v. Boeing*, filed in this district in 1998, alleged discrimination against African-American employees employed by Boeing "for any length of time during the period from June 6, 1994, to present." (Agricultural Mot. 2 (Dkt. No. 136).) Another class action complaint was filed against Boeing in this district in 1999, *Nouri, et al. v. Boeing*, alleging discrimination against Asian and Pacific Islander employees. (*Id.* at 3.) Boeing received verdicts in its favor in both *Williams* and *Nouri* in 2004 and 2005. (*Id.*) A third class action lawsuit, filed in 2000, *Beck, et al. v. Boeing*, alleged gender discrimination starting in February 1994. (*Id.*) The *Beck* case settled in June 2004 for $72.5 million. (*Id.*)

Boeing thereafter sought to recover from its insurers more than $80 million in attorneys' fees, expert costs, and other expenses incurred to defend these lawsuits. (*Id.*) Boeing had purchased its insurance in layers, and as a result, numerous insurance policies issued by different carriers were potentially obligated to pay these costs. Two separate towers of coverage are implicated by the instant motions. One tower consists of the insurance that was in place before 1996. Prior to January 1, 1996, Boeing purchased occurrence-based general liability policies that included coverage for employment discrimination liability. (*Id.*) These occurrence-based policies provided coverage for losses stemming from discrimination injuries that occurred during the policy period. (*Id.* at 3 n.3.) For 1995, Boeing's tower of insurance has been described by the parties somewhat inconsistently. Agricultural reports that in 1995, the first layer in Boeing's tower of insurance coverage was Boeing's own self-insured retention up to $2 million. (*Id.* at 3–4.) The next layer was a policy from National Union Fire Insurance Company of Pittsburgh ("National Union"). (*Id.* at 4.) In other words, if Boeing's expenses for employment discrimination injuries during 1995 exceeded $2 million, then the National Union policy would cover up

ORDER - 2

to the next $25 million. Federal insured the next $25 million above the National Union policy. (*Id.*) Federal, however, describes the first layer in Boeing's 1995 tower of insurance as a Kemper Companies policy, with limits of $2 million; followed by Boeing's self-insured retained limit of $12 million; followed by a National Union policy with a $25 million limit; followed by a Federal policy with a limit of $25 million; followed by other excess policies. (Federal Resp. Appendix B (Dkt. No. 145 at 27).) In any event, it is undisputed that Federal's 1995 policy was excess to the National Union policy. (Federal 1995 Policy 1 (Dkt. No. 146-13 at 2).)

Starting in 1996, however, Boeing's employment-related insurance coverage changed from occurrence-based policies to occurrence-reported policies. (*Id.*) Occurrence-reported policies "provide coverage for occurrences first reported in a certain year, irrespective of when the occurrence transpired." (Federal Mot. 3 n.5 (Dkt. No. 128 at 4).) In 1998, Boeing's tower of insurance coverage was, in pertinent part, as follows: Boeing was self-insured up to $15 million; Federal, the primary insurance carrier, insured up to the next $35 million; the first excess carrier, TIG, insured up to the following $25 million; excess carriers Reliance and Chubb Atlantic insured up to the next $25 million; excess carrier Gulf insured the $25 million after that; and excess carriers Agricultural and Lumberman together insured the next $35 million. (*Id.* at 3.)

Boeing initiated this lawsuit, seeking a declaratory judgment declaring the rights, duties, and liabilities of itself, Agricultural, Federal, Gulf, TIG, and the Washington Insurance Guaranty Association with respect to the insurance policies' coverage for Boeing's expenses incurred in defending the class action lawsuits. (Complaint ¶ 1.1 (Dkt. No. 1).) On September 19, 2005, this Court ordered the parties to proceed to arbitration under the terms of Federal's 1998 policy, which the excess carriers' policies incorporated. (Dkt. No. 86.) In arbitration, Federal's position was that the discrimination lawsuits "together constituted a single integrated employment occurrence covered under Coverage D of Federal's Policy No. 7966-38-55 (the 'Federal 1998 Policy'), and the tower of insurance excess thereto, for the year in which it was first reported (1998)." (Federal's Mot. 4 (Dkt. No. 128 at 5).) Consistent with that

ORDER - 3

position, Federal tendered to Boeing the $35 million that was the full limit of liability available under the Federal 1998 policy. (*Id*.) During arbitration, Boeing eventually agreed that the lawsuits constituted a single integrated employment occurrence that was covered under the 1998 Federal policy, and released all claims it had against Federal. (*Id*. at 4–5.)

In Agricultural's arbitration with Boeing, Agricultural asserted that the lawsuits constituted three separate occurrences attributable to other years in addition to 1998, rather than a single integrated employment occurrence, ostensibly seeking to minimize its liability because Agricultural did not renew its insurance policy with Boeing after 1998. (*See* Agricultural Mot. 7 (Dkt. No. 136).) The arbitral panel concluded that "the underlying class actions constitute[d] a single Integrated Employment Occurrence, lodged in the 1998 policy year." (Arbitral Panel Ruling Nov. 22, 2006 (Dkt. No. 130-2 at 33–35).) Following that ruling, Agricultural and Boeing settled. In their settlement agreement, Agricultural agreed to pay Boeing $6 million pursuant to its 1998 excess layer policy. (Agricultural Mot. 9–10 (Dkt. No. 136).) Agricultural also agreed to release National Union and Kemper Companies from any claims arising from the employment discrimination lawsuits, but purported to preserve its right to seek equitable contribution from other insurers. (Boeing/Agricultural Settlement Agreement (Dkt. No. 139-5 at 1–9).) Boeing agreed, in turn, to release Agricultural from any claims, whether sounding in tort or contract, arising from the employment discrimination lawsuits. (*Id*.)

Agricultural now contends that Federal's 1995 second-layer excess policy, the occurrence-based policy, should have covered Boeing's claim up to Federal's $25 million limits. (*Id*. at 2.) If Federal had done so, Agricultural argues, then Agricultural's 1998 fifth-layer excess policy would have had no exposure to liability, and its $6 million payment to Boeing would have been unnecessary. (*Id*.) Agricultural is precluded from making this argument as to Kemper Companies or National Union, whose 1995 policies are primary to Federal's 1995 policy, because, as noted above, Agricultural released those companies in its settlement with Boeing. Agricultural urges the Court to use its equitable powers to order Federal to reimburse Agricultural the $6 million under a theory of equitable contribution. Federal argues

ORDER - 4

that Agricultural's cross-claim for equitable contribution is untenable as a matter of law.

## II. APPLICABLE STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a summary judgment motion, . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In addition:

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists.

*Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co., Inc.*, 951 P.2d 250, 256 (Wash. 1998) (internal quotations and citations omitted).

## III. ANALYSIS

ORDER - 5

The Court finds Federal's first argument for summary judgment dispositive of all the issues raised by the parties, and therefore addresses only this argument in the following Order. Specifically, Federal argues that Agricultural's cross-claim for equitable relief has been mooted by the arbitral panel's ruling that the underlying employment discrimination class action lawsuits constituted a single integrated employment occurrence lodged in the 1998 policy year. (Federal Mot. 1–7 (Dkt. No. 128 at 2–8); Ruling (Dkt. No. 130-2 at 35).) Based on that ruling and the express language of Federal's 1998 policy, the Court finds that Agricultural is not entitled to equitable relief.

In its First Amended Answer to the Complaint, Agricultural asserted as a cross-claim that it was seeking:

> a declaratory judgment against . . . all defendants herein regarding the proper application of . . . coverages underlying Agricultural's coverage in 1998 including coverages provided by the other defendants herein, and of applicable coverage provided by defendants in years other than 1998.

(Agricultural First Am. Answer 12 (Dkt. No. 29).) Agricultural also specifically sought a judgment declaring that the *Williams* case constituted an Integrated Employment Occurrence attributable to the 1998 coverage year; that the *Beck* and *Nouri* lawsuits were separate Integrated Employment Occurrences that were not attributable to coverage in 1998; that Agricultural had no obligation to cover any of Boeing's Underlying Liabilities except for certain portions of the *Williams* Integrated Employment Occurrence; and prayed for any other relief the Court deemed just and equitable.[1] (*Id*. at 12–13.)

---

[1]Although Agricultural did not spell out the fact that it would be seeking equitable contribution from Federal in its cross-claim articulated above, as the case progressed, Agricultural gave notice to the Court and the parties of its narrowed cross-claim when, in a status report filed by the parties on June 14, 2007, Agricultural stated that it was "ready to proceed with its contribution cross-claim seeking a fairer allocation between them of the insurers' respective settlement payments to Boeing[.]" (Joint Status Report 2 (Dkt. No. 118).) Federal notes that "Agricultural has not pleaded a claim for equitable contribution in the Cross Claim, nor prayed for contribution therein," but "assumes that the Court will treat the Cross-Claim as amended to plead a claim for contribution." (Federal Mot. 1 n.2 (Dkt. No. 128 at 2).) Given the fact that Agricultural explicitly sought in its cross-claim a declaratory judgment sorting out the proper application of coverages by all the defendants, and given the notice that Agricultural provided as to its more specific request for equitable relief reallocating the settlement payments made to Boeing amongst the insurers, and the apparent lack of prejudice to Federal in permitting Agricultural to

ORDER - 6

Agricultural admits that, to the extent that Agricultural's cross-claim relies upon the argument that the *Beck*, *Nouri*, and *Williams* lawsuits constituted three separate Integrated Employment Occurrences, those claims were rendered moot by the arbitral ruling. (*See* Agricultural Resp. 3 (Dkt. No. 164).) As such, Agricultural concedes that Federal's post-1998 occurrence reported policies are not liable, and Federal's liability under its 1998 policy is limited to one $35 million annual limit, which Federal already paid to Boeing. (*Id.*) However, Agricultural argues that:

> because the plaintiffs in the underlying actions alleged that Boeing was liable to them for conduct occurring in 1995 and that they suffered damage in 1995 from this single occurrence, Federal's 1995 occurrence-based policy also provides coverage.

(*Id.* at 4.) Agricultural explains that "Boeing had potential coverage for this loss from both its 1995 occurrence-based general liability insurers and its 1998 occurrence-reported liability insurers[,]" (Agricultural Mot. 1 (Dkt. No. 136)), and argues that Boeing's choice to recover from the latter insurers does nothing to change the fact that Federal's 1995 policy should have paid up to its maximum before its 1998 policy kicked in. According to Agricultural, Federal's 1998 occurrence-reported policy was intended to be excess to Federal's 1995 policy.

However, in order to determine the intent of the parties, the Court's primary source is the contracts themselves. Agricultural's policy states that:

> The insurance afforded by this policy shall be excess insurance over any valid and collectible insurance available to you, for loss covered by those policy's [sic] described in Item 5 - Schedule of Underlying Policies (except insurance purchased specifically to apply excess of this policy).

(Agricultural 1998 Policy 4 (Dkt. No. 130-2 at 60).) Item 5 - Schedule of Underlying Policies refers only to Federal's 1998 Policy. (*Id.* at 65.)

Federal's 1998 policy expressly states that:

> If we or any insurer affiliated with us issue coverage for more than one policy period, our obligation for <u>all loss</u> arising out of any one **employment occurrence** (or **integrated**

---

proceed on its equitable contribution claim, the Court will treat the cross-claim as properly pled.

ORDER - 7

> **employment occurrence**) shall be subject to, and governed by, only the Limits of Insurance, the Employment Discrimination Liability Retained Limits and the other related terms and conditions of the Coverage D, if any, which was effective at the time notice of such **employment occurrence** (or **integrated employment occurrence**) was mailed or delivered to us.

(Federal 1998 Policy 2 (Dkt. No. 130-2 at 23) (boldface in original) (underline added).) By this language, Federal made clear to Boeing that if more than one Federal policy potentially covered losses arising from an integrated employment occurrence, Federal's obligation to pay would stem only from the terms of the Coverage D of the policy that was in effect at the time that Boeing notified Federal of that occurrence. The arbitral panel's ruling that the underlying lawsuits were an integrated employment occurrence lodged in 1998 therefore meant that Federal's liability to Boeing for <u>all loss</u> would arise only from its 1998 policy. Federal tendered the $35 million limits of that policy to Boeing even before arbitration began, and settled with Boeing before arbitration concluded.[2]

---

[2] The Court notes that Federal's 1998 policy also states that:

> If **other insurance** applies to claims or **suits** covered by this insurance, this insurance is excess, and we will not make any payments until the **other insurance** has been exhausted by payment of claims. This insurance is not subject to the terms or conditions of any **other insurance**.

(Federal 1998 Policy 7 (Dkt. No. 130-2 at 28) (boldface in original).) In addition, "other insurance" is defined as:

> a policy of insurance or any type of self-insurance or other mechanism by which an **insured** arranges for funding of loss. **Other insurance** does not include a policy of insurance, self-insurance or other mechanism specifically arranged to be excess of this insurance.

(*Id*. at 9 (boldface in original).) The Court does not read this "other insurance" clause to mean that Federal's 1995 policy is intended to pay first for losses arising from an integrated employment occurrence, since the 1998 policy clearly indicates the contrary. The Court reads this clause to mean only that if other insurance, besides other insurance provided by Federal, also applies to the loss arising from an integrated employment occurrence, those policies are meant to be primary to Federal's 1998 policy. Although Agricultural may hypothetically have had a valid equitable contribution claim against National Union or Kemper Companies pursuant to the 1995 insurance tower, Agricultural released those companies in its settlement with Boeing.

ORDER - 8

Agricultural argues that the policy language quoted above should not be given effect because "the 1995 policy itself prohibits *ex post facto* amendments of its terms unless a formal endorsement is issued[,]" and no such endorsement issued. (Agricultural Resp. 11 (Dkt. No. 164).) In support of this statement, Agricultural points to language in the National Union policy underlying Federal's 1995 policy, which states that "nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereto, signed by an authorized representative of the Company." (National Union Policy (Dkt. No. 139-2 at 15).) Agricultural argues that this language was incorporated into Federal's 1995 policy, which states that:

> IT IS AGREED THAT THIS INSURANCE INDEMNIFIES THE INSURED ON THE SAME TERMS, CONDITIONS AND LIMITATIONS OF THE UNDERLYING UMBRELLA LIABILITY POLICY ISSUED BY THE NATIONAL UNION FIRE INSURANCE COMPANY.

(Federal 1995 Policy (Dkt. No. 139-2 at 26).) However, the Court will not read the language in National Union's policy, which indemnified Boeing on an occurrence-based scheme, as defeating Federal's express language in its 1998 occurrence-reported policy, which was triggered when Boeing reported to its insurers the single integrated employment occurrence in 1998. The Court does not interpret the 1998 policy as superceding or replacing the 1995 policy; rather, the 1998 policy was at least equally valid, and pursuant to its terms, Federal appropriately tendered to Boeing its policy limits. Agricultural's policy was expressly excess to Federal's 1998 policy, and therefore, Agricultural was obligated to settle with Boeing pursuant to Agricultural's own 1998 policy.

Agricultural points to a January 1996 fax by Federal's underwriter to Boeing, introducing the idea of the occurrence-reported framework and listing its features; one of those features is "[l]osses telescope back to limit(s) provided in period in which notice of occurrence is made." (Dkt. No. 139-2 at 28.) Based on this, Agricultural argues:

> Federal has submitted no evidence to suggest the parties intended losses covered by pre-1996 policies to telescope forward, thereby eliminating millions of dollars of pre-1996 occurrence-based coverage. Absent such evidence, Federal's proposed construction is not reasonable.

ORDER - 9

(Agricultural Reply (Dkt. No. 149 at 10).) However, the Court disagrees with this assessment. It is not unreasonable for Federal to construe its 1998 policy as providing that if more than one Federal policy potentially applied to losses from an integrated employment occurrence, the only policy that would obligate Federal to pay would be the Coverage D in the occurrence-reported policy in effect at the time the integrated employment occurrence was first reported. The underlying lawsuits were deemed by the arbitrators to be an integrated employment occurrence reported in 1998; Federal recognized that its 1998 policy was triggered and tendered to Boeing its 1998 policy limits (*see* Letter from Counsel for Federal to Counsel for Boeing May 2, 2005 (Dkt. No. 129-2 at 2–3)); and the other insurers with policies excess to Federal's 1998 policies all paid or settled with Boeing. (*See* Federal Resp. Appendix A (Dkt. No. 145 at 26).)

What Agricultural asks this Court to do is apply its equitable powers to do what is fair. Specifically, Agricultural asks the Court to grant it equitable contribution, which is:

> an insurer's right to recover from a co-obligor its proportionate share in the same liability. Generally, when fewer than all of the insurers on a risk pay more than their equitable share of the obligation, insurers seek compensation from co-insurers who did not pay their respective share.

*Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 153 P.3d 877, 881 (Wash. Ct. App. 2007). However, the Court is not persuaded that Federal failed to pay its respective share to Boeing for its losses arising from what the arbitrators found to be a single integrated employment occurrence. Rather, Federal paid 100% of its 1998 policy limits, while Agricultural paid only 20% of its 1998 limits. (Federal Resp. Appendix A (Dkt. No. 145 at 26).) Both Agricultural and Federal had an opportunity to arbitrate their claims with Boeing and assert their positions with respect to other possible coverage. The Court is not moved to use its equitable powers now to disturb the parties' settlements and potentially re-open the floodgates to litigation. Accordingly, the Court GRANTS Federal's motion for summary judgment and DISMISSES

ORDER – 10

Agricultural's cross-claim.[3]

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Federal's Motion for Summary Judgment (Dkt. No. 128) and DENIES Agricultural's Motion for Summary Judgment as MOOT (Dkt. No. 136). The Clerk is instructed to CLOSE the case.

DATED this 28th day of July, 2008.

/s/ John C. Coughenour

John C. Coughenour
UNITED STATES DISTRICT COURT

---

[3]Although "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits[,]'" *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citation omitted), the Court finds that by granting Federal's summary judgment motion, it must DENY Agricultural's motion for summary judgment as MOOT.

ORDER – 11